IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LERMON RUSSELL

                Plaintiff,

v.                                  CIVIL ACTION NO.  2:19-cv-00918

COMMISSIONER LOLITA BUTCHER, et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss or in the Alternative a Motion for Summary Judgment, [ECF No. 11], and a Renewed Motion to Dismiss the Amended Complaint or in the Alternative a Motion for Summary Judgment, [ECF No. 46], filed by Defendants Dylan Hayhurst, Richard Toney, Dustin Bell, and Dakota Benton (collectively "Defendant Correctional Officers" or "Defendants"). Defendant Jesse Smith joined in the Motions. [ECF No. 49]. The Motions, [ECF Nos. 11, 46], are **DENIED without prejudice** for the reasons that follow.

I.    **Introduction**

This case involves a series of alleged assaults and other serious abuses—some allegedly motivated by race—that Plaintiff claims took place during his incarceration.

(a) **The parties**

Plaintiff is in custody of the West Virginia Division of Corrections and Rehabilitation ("WVDOCR"). Pl.'s Amend. Compl. [ECF No. 44] ¶ 1. At all times

relevant to this action, Plaintiff was housed in administrative segregation on the Quilliams II unit within Mount Olive Correctional Complex ("MOCC").

At the time of the alleged attack by Inmate Jacob Samples upon Plaintiff, Defendant Lolita Butcher was the Commissioner of the WVDOCR and Defendant David Ballard was the Warden/ Superintendent of MOCC. *Id.* at ¶¶ 2, 4. At the time Plaintiff was allegedly assaulted by Defendants Bell and Benson, Defendant Betsy Jividen was the Commissioner of WVDOCR and Defendant Donald Ames was the Warden/Superintendent of MOCC. *Id.* at ¶¶ 3, 5. At all relevant times alleged in the Amended Complaint, Defendants Dylan Hayhurst, Matthew Hypes, Benjamin Elmore, Jesse Smith, Richard Toney, Dustin Bell, and Dakota Benton were MOCC correctional officers posted or called to Quilliams II segregation unit. *Id.* at ¶ 6. Defendants Nurse Joyce Coleman and Nurse Joshua Gregory are, and at all relevant times alleged in the Amended Complaint were, registered nurses employed by Wexford Health Sources, Inc., and contracted by WVDOCR to provide medical services at MOCC. *Id.* at ¶ 6.

### (b) Procedural background

On December 31, 2019, Plaintiff filed his Complaint. [ECF No. 1]. On March 27, 2020, Defendants Ames, Ballard, Butcher, Jividen, and WVDOCR, filed a Motion to Dismiss. [ECF No. 9]. On March 31, 2020, Defendants Bell, Benton, Hayhurst, and Toney, filed a Motion to Dismiss or in the Alternative a Motion for Summary Judgment. [ECF No. 11]. On June 4, 2020, Plaintiff filed an Amended Complaint. [ECF No. 44]. The Amended Complaint voluntarily dismissed claims against

Defendant the WVDOCR, identified Defendant "John Doe 1" as Correctional Officer Matthew Hypes, and dropped all requests for injunctive relief. *See* [ECF Nos. 1, 44]. On June 5, Defendants Hayhurst, Toney, Bell, and Benton renewed their Motion to Dismiss and in the Alternative Motion for Summary Judgment, incorporating their prior memorandum in support. [ECF No. 46]. On June 14, 2020, Defendants Ames, Ballard, Butcher, and Jividen renewed their Motion to Dismiss. [ECF No. 48]. On June 15, 2020, Defendant Smith joined in Defendant Correctional Officers' Motion to Dismiss, [ECF No. 11]. [ECF No. 49].

   (c) **Factual allegations**

   Plaintiff is a Black man, who according to him, was the only African American housed in his Pod (Pod 4) at MOCC. *Id.* at ¶ 13. According to Plaintiff, he was frequently subjected to the use of racial slurs and racist remarks by both fellow inmates and correctional officers. *Id.* at ¶ 12. The Amended Complaint states that Plaintiff's Pod was also populated with members of the Aryan Brotherhood, which "is the nation's oldest major white supremacist prison gang and a national crime syndicate." *Id.* at ¶ 15. The Amended Complaint specifically identifies four alleged Aryan Brotherhood members housed in Pod 4: Inmates Steven Branscome, Gregory Burdette, James Zell, and Jacob Samples. *Id.* at ¶ 16. Plaintiff's Amended Complaint claims that these inmates frequently used racial epithets towards him and threatened physical violence against him. *Id.* at ¶¶ 17–23. Plaintiff further claims that Inmate Samples had previously been allowed to enter the cell of a fellow inmate, Mike Connor, and attack him. *Id.* ¶ 24.

3

The Amended Complaint alleges the following incident. Defendant Correctional Officers Hayhurst and Hypes escorted Plaintiff to shower. *Id.* at ¶ 29. Upon arrival to the shower area, Inmate Samples burst out of a hiding area and attacked Plaintiff, "while Defendants Hayhurst and Hypes stepped several feet away" leaving Inmate Samples "an unobstructed path towards" Plaintiff. *Id.* at ¶¶ 31–32. Plaintiff claims that Inmate Samples repeatedly stabbed him with a sharp foreign object, jammed his thumb into Plaintiff's eye and attempted to gouge out Plaintiff's eyeball, and repeatedly struck Plaintiff in the face and head. *Id.* at ¶¶ 33, 35, 36. At this time, Plaintiff had his hands cuffed behind his back and leg irons restraining his ankles, while Inmate Samples was unrestrained. *Id.* at ¶¶ 28, 32, 33. During the assault both Inmate Samples and Defendants Hayhurst and Hypes yelled racial slurs at Plaintiff, including the use of the n-word. *Id.* at ¶¶ 33, 34. Specifically, Plaintiff recalls the correctional officers screaming "kill that monkey." *Id.* at ¶ 34. During this attack, Plaintiff claims that neither Defendant Hayhurst nor Defendant Hypes intervened to stop the assault. *Id.* at ¶ 37. The Amended Complaint alleges that only once Inmate Samples "tired and removed himself voluntarily from atop" Plaintiff did Defendants Hayhurst and Hypes begin to deploy Oleoresin Capsicum ("OC") gas spray towards the both Inmate Samples and Plaintiff. *Id.* at ¶¶ 39–41. At that point, Plaintiff claims he lost consciousness only to be "roused awake by a jarring kick to the side of his body by Defendant Hayhurst." *Id.* at ¶ 44.

The Amended Complaint alleges Defendants Hayhurst and Hypes then took Plaintiff to be medically evaluated by Defendant Nurse Coleman. *Id.* at ¶ 45. Plaintiff

claims that Defendant Toney was present for the medical evaluation. *Id.* Plaintiff states that he was not provided with any substantive medical care and instead was merely told that "he was in shock" and "that he would be fine." *Id.* at ¶¶ 47–48. "Plaintiff expressed to Defendant Toney his grievance and reasonable belief that his attack had been arranged for and ordered by the Aryan Brotherhood." *Id.* at ¶ 49. According to Plaintiff, "Defendant Toney dismissed Plaintiff's grievance, and responded by saying 'this conversation is over and this incident never happened.'" *Id.* at ¶ 50. Plaintiff was allegedly "not allowed until over an hour later to take a shower and rinse off the OC gas that was burning his body." *Id.* at ¶ 52.

In the weeks that followed the incident, Plaintiff claims he made continued requests for additional medical treatment and expressed that he feared for his safety in Pod 4. *Id.* at 53–57. Plaintiff alleges that he never received additional medical treatment. *Id.* at 53–56. The Amended Complaint also claims that his grievances were ignored until "approximately five months after he was attacked by Inmate Samples, Plaintiff was transferred out of Pod 4 only after Inmate Branscome specifically threatened to stab the Plaintiff." *Id.* at ¶ 57.

According to Plaintiff, Inmate Samples informed Plaintiff that Defendants Hayhurst, Hypes, Elmore, Smith, and Toney knew of the Aryan Brotherhood's plan to attack Plaintiff. *Id.* at ¶ 64. The Amended Complaint contains allegations that Defendants Smith and Elmore used racial slurs, including the n-word, against Plaintiff and that they tried to incite tension between Plaintiff and the Aryan Brotherhood members. *Id.* at ¶¶ 58–62.

Plaintiff's Amended Complaint alleges a second series of incidents which took place in March of 2019. The incidents are alleged as follows. Defendant Correctional Officers Benton and Bell repeatedly threw Plaintiff's breakfast on the floor while repeatedly yelling racial slurs, including the n-word, at him. *Id.* ¶¶ 69–76. At one point, Defendant Benton allegedly threw a pitcher of hot coffee on Plaintiff through the bean hole in his cell, causing burns to Plaintiff's stomach and groin areas. *Id.* at ¶ 72. At another point, Defendant Benton "flipped the [food] tray in the air to make it appear that the Plaintiff had thrown his tray at Defendants Benton and Bell. Defendant Benton then rushed into Plaintiff's cell and began spraying him with a chemical agent known as phantom gas until the large cannister was empty, causing severe burning" to Plaintiff's body. *Id.* at ¶¶ 75, 76. Defendants Benton and Bell then allegedly shackled Plaintiff hands and feet and removed him from his cell. The Amended Complaint claims that "Defendants Benton and Bell [then] began falsely and loudly proclaiming that the Plaintiff was resisting, and these officers then threw the Plaintiff to the floor head-first and began punching and kicking him while he was fully restrained." *Id.* at ¶¶ 77, 78. Plaintiff claims that after this assault he was taken to Defendant Nurse Joshua Gregory, who allegedly failed to provide any substantive treatment of his injuries. *Id.* at ¶ 82.

The Amended Complaint also includes several allegations regarding a photo that was released in December 2019 "depicting more than thirty (30) correctional officers employed by the WVDOCR giving a Nazi salute." *Id.* at ¶ 87–91.

6

In the Amended Complaint, Plaintiff alleges the following claims[1]: Eighth Amendment violations and violations of "the Constitutions, statutes and common law of the State of West Virginia and the United States of America" (Count I); "violations of clearly established rights secured to Plaintiff under the Constitutions, statutes and common law of the State of West Virginia and the United States of America" (Count II) against Defendants Hayhurst and Hypes; Eighth Amendment violations for use of excessive force (Count III) against Defendants Bell and Benson; Eighth Amendment violations and/or negligence for failure to provide medical care (Count IV); civil conspiracy (Count V) against Defendants Hayhurst, Hypes, Elmore, Smith, and Toney; Equal Protection Clause of the Fourteenth Amendment violations (Count VI) against all Defendants; supervisory liability (Count VII)[2] against Defendants Butcher, Jividen, Ballard and Ames; and supervisory liability (Count VIII) against Defendants Butcher, Jividen, Ballard, and Ames. [ECF No. 44].

Defendant Correctional Officers now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively, for summary judgment on all claims made against them on the basis that Plaintiff failed to exhaust his available administrative remedies.

## II.    Legal Standard

---

[1] The Amended Complaint is not entirely clear as to the causes of action alleged in Counts I, II, IV, VII, VIII. Furthermore, it is not clear which Defendants Plaintiff brings Counts I, IV, VI against.

[2] Plaintiff's Amended Complaint refers to a "Joseph Braddock"; however, I assume, as do Defendants, that the Amended Complaint meant to refer to Plaintiff Lermon Russell.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

Courts are limited to the pleadings in evaluating a motion to dismiss. But when a Defendant submits evidentiary documents at the motion to dismiss stage, the motion may be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Rule 12(d) dictates that when a motion to dismiss is converted into a motion for

summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

In this case, Defendant Correctional Officers rely on a series of grievances submitted by Plaintiff to the prison, which they attach as Exhibit B–J to their Motion. [ECF No. 11]. These grievances, however, constitute evidence outside the pleadings and thus in order for me to consider them, the instant Motion would have to be converted to a motion for summary judgment. Plaintiff argues that he has not had adequate discovery at this stage to present all material that pertains to the issue of administrative exhaustion. I agree. Plaintiff represents to the court, both in the Amended Complaint and his response to the instant Motion, that there are additional grievances, which may be relevant to his claims that have not been submitted by Defendant Correctional Officers. *See* Amend. Compl. [ECF No. 44] ¶ 54 ("Plaintiff submitted grievances regarding Inmate Samples' attack, and in part, requested that he be transferred from Pod 4 because he feared for his safety and that he would be attacked yet again by members of the Aryan Brotherhood."); *See* Amend. Compl. [ECF No. 44] ¶ 84 ("Plaintiff filed a grievance regarding Officers Benton and Bell's assault, which on information and belief, led to an investigation."); *see also* Pl.'s Resp. [ECF No. 17] 10–11. Out of an abundance of caution, I find that it would be premature to decide Defendant Correctional Officers' Motion as a motion for summary judgment at this stage in the litigation. I treat the Motion as a motion to dismiss.

III.   **Discussion**

9

Defendant Correctional Officers argue Plaintiff's Amended Complaint should be dismissed because he did not exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA") and the West Virginia Prison Litigation Reform Act ("WVPLRA"). Administrative exhaustion is a threshold question that must be decided before determining the merits of a case. *Id.* Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)). "Failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead exhaustion, nor do they bear the burden of proving it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Failure to exhaust may be a basis for a dismissal for a failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Legg v. Adkins*, No. 2:16-CV-01371, 2017 WL 722604, at *2 (S.D.W. Va. Feb. 23, 2017) (granting a motion to dismiss a prisoner's claims for failure to exhaust under the PLRA and WVPLRA). But "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (quoting *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir.2007).

Both PLRA and WVPLRA require inmates to exhaust their administrative remedies before they bring a lawsuit. 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the PLRA broadly, stating that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Similarly, the WVPLRA makes it mandatory for an inmate to first exhaust administrative remedies provided by the inmate's correctional facility before instituting a civil action challenging the inmate's confinement. W. Va. Code § 25-1A-2; *see also White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility in which he/she is housed."). The WVPLRA provides that: "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison." *Id.* § 25-1A-2(a).

The WVDOCR sets the uniform procedures for filing an inmate grievance. *See* W. Va. Code § 25-1A-2. If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of

administrative remedies afforded him/her and therefore has not exhausted
administrative remedies." *Miller v. Rubenstein*, No. 2:16-CV-05637, 2018 WL 736044,
at *5 (S.D.W. Va. Feb. 6, 2018) (citing Policy Directive 335.00(V)(D)(4).

The procedure for filing an inmate grievance is as follows:

> An inmate may file a grievance using forms provided by the
> prison "within fifteen (15) days of any occurrence that
> would cause him/her to file a grievance." Only one issue or
> complaint may be grieved per form, and the inmate must
> submit the form to his or her unit manager. Upon receipt
> of the grievance form, the unit manager logs the grievance
> and assigns it a number. The unit manager is required to
> return an answer to the grievance back to the inmate
> within five days. If the unit manager fails to answer or
> reject the grievance within five days, the inmate may treat
> the non-response as a denial and proceed to the next level
> of review. Appeals from the unit manager's response (or
> non-response, as the case may be) are submitted "to the
> Warden/Administrator within five (5) days from delivery of
> the response." "The Warden/Administrator shall respond
> to the appeal ... within five (5) days." Finally, if the
> warden's response is unsatisfactory, or if the warden does
> not respond within the applicable time, the inmate may
> appeal to the Commissioner of the Division of Corrections
> within five days of the warden's response or after the
> applicable time has passed. The Commissioner is allotted
> ten days to respond to the appeal.

*Id.* (quoting Policy Directive 335.00) [3]

Policy Directive 335.00 specifically states that, "'[e]xhaustion' shall mean
submitting an accepted grievance and properly appealing an accepted grievance fully
and receiving a final response thereto by the Commissioner. Rejections do not

---

[3] Defendants in this case point to Section 90 of the West Virginia Code Regulations
as the authority which outlines the grievance procedure process. Section 90, however,
was repealed in 2016.

12

constitute exhaustion. Remands are not final responses unless expressly stated in the decision." *Hatcher v. Rubenstein*, No. 2:17-CV-02054, 2018 WL 6036433, at *9 (S.D.W. Va. Aug. 8, 2018), report and recommendation adopted, No. 2:17-CV-02054, 2018 WL 4628321 (S.D.W. Va. Sept. 27, 2018) (quoting Policy Directive 335.00(V)(D)(4)). The Policy Directive further provides that "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefor has not exhausted administrative remedies." *Id.* (quoting Policy Directive 335.00(V)(A)(5)).

To the extent that Plaintiff in this case argues WVPLRA does not require an inmate to exhaust administrative remedies for allegations of "violence, sexual assault or sexual abuse against an inmate," Plaintiff is incorrect. In 2013, the WVPLRA statute was amended to say "no inmate shall be prevented from…bringing a civil or criminal action alleging violence, sexual assault[,] or sexual abuse, *after exhaustion of administrative remedies*." W. Va. Code § 25-1A-2a(i) (emphasis added). Exhaustion is still required for the types of claims made by Plaintiff. *See e.g.*, *Miller v. Rubenstein*, No. 2:16-CV-05637, 2018 WL 736044, at *6–7 (S.D.W. Va. Feb. 6, 2018); *Baker v. Hammons*, No. 2:15-CV-13849, 2016 WL 538481, at *2 (S.D.W. Va. Feb. 9, 2016).

In this case, Defendant Correctional Officers argue Plaintiff failed to exhaust administrative remedies under the PLRA and WVPLRA. As previously stated, Defendant Correctional Officers rely on grievances attached as exhibits as integral to

their argument. [ECF No. 11]. These exhibits reflect that the grievances submitted by Plaintiff were rejected for not following proper procedure, either because they were untimely and/or because the single envelope included multiple grievances. *See* Exhibit B–J [ECF No. 11–2–10]. As Defendant Correctional Officers correctly indicate, a rejected grievance does not exhaust available administrative remedies. It is clear to the court, at this point in the litigation, that if these grievances were the only grievances submitted by Plaintiff then Plaintiff failed to satisfy exhaustion under the PLRA and WVPLRA. However, because Plaintiff claims that other grievances exist and that further discovery is needed to recover them, it would be premature to consider Defendants' Motion as a motion for summary judgment. At the motion to dismiss stage, it is improper to consider evidence external to the pleadings. I do not consider the exhibits provided by Defendants at this time.

Absent this evidence, I find that Defendants have not sufficiently demonstrated their affirmative defense that Plaintiff failed to exhaust administrative remedies. Accordingly, Defendant Correctional Officers' Motion to Dismiss, [ECF No. 11], and Renewed Motion to Dismiss, [ECF No. 46], are **DENIED without prejudice**. In so far as these Motions alternatively Motions for Summary Judgement, they are **DENIED without prejudice** as premature.

## IV.    Conclusion

Defendants Hayhurst, Toney, Bell, and Benton's Motion to Dismiss, [ECF No. 11], and Renewed Motion to Dismiss, [ECF No. 46], are **DENIED without prejudice**. In so far as these Motions are alternatively Motions for Summary Judgment they are

14

**DENIED without prejudice** as premature. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 17, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE