IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LERMON RUSSELL

          Plaintiff,

v.                            CIVIL ACTION NO.   2:19-cv-00918

COMMISSIONER LOLITA BUTCHER, et al.,

          Defendants.

MEMORANDUM OPINION & ORDER

Pending before the court are two motions to for summary judgment filed by two separate groups of defendants. Defendants Joyce Coleman and Joshua Gregory filed the first Motion for Summary Judgment [ECF No. 84]. Defendants Dylan Hayhurst, Matthew Hypes, Richard Toney, Benjamin Elmore, Jesse Smith, Dustin Bell, and Dakota Benton filed the second Motion for Summary Judgment [ECF No. 86]. Both these Motions are narrowly tailored to address the issue of exhaustion under the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a). Plaintiff responded to both Motions [ECF No. 90] and Defendants have replied [ECF Nos. 91, 92]. Plaintiff then requested permission to file a Surreply to Defendants' Replies [ECF No. 93]. These Motions are ripe for adjudication. For the reasons stated below, Defendants' Motions are **GRANTED**.

## I.    Procedural History

Defendants first raised the issue of exhaustion in their Motions to Dismiss, alleging that Plaintiff failed to properly exhaust his claims under the Prison Litigation Reform Act and attached the grievances filed by Plaintiff to that Motion. When addressing Defendants' Motions to Dismiss in an earlier order [ECF No. 58] I found that "It is clear to the court, at this point in the litigation, that if these grievances were the only grievances submitted by Plaintiff then Plaintiff failed to satisfy exhaustion under the PLRA and WVPLRA." But, at that stage in the litigation, I found that Plaintiff had sufficiently stated a claim and that the issue of exhaustion would be developed in discovery. After this order, I ordered a stay in general discovery and limited the scope of discovery to the issue of exhaustion only. [ECF No. 76].

## II.    Relevant Facts

Plaintiff is incarcerated at Mount Olive Correctional Complex. This case concerns two alleged use of force incidents by correctional officers and alleged mistreatment by medical staff. The parties and alleged facts have been described at length in my Order on the Motion to Dismiss [ECF No. 58]. I adopt and incorporate those descriptions here. In this order, I will detail the two incidents alleged by Plaintiff only so far as necessary to discuss the exhaustion issues surrounding each.

The first incident, in December 2017, involves six of the nine remaining defendants. Plaintiff asserts that Defendants Hayhurst, Hypes, Toney, Elmore, and

Smith, all correctional officers at Mount Olive Correctional Complex, orchestrated a physical assault on Plaintiff by Inmate Samples, a white supremacist and member of the Aryan Brotherhood. Plaintiff further asserts that Defendant Coleman, a licensed practical nurse at Mount Olive Correctional Complex, failed to provide proper medical care after this attack. I will refer to this attack, and alleged lack of medical care, as the Samples Incident throughout this opinion.

There are three relevant facts concerning the Samples Incident and the issue of exhaustion. The first is that Plaintiff received a copy of the Mount Olive Correctional Complex Inmate Handbook which lays out the procedures for filing a grievance at that institution. According to the dates on the Acknowledgement of Receipt form, signed by Plaintiff, he received the handbook on October 10, 2017. Plaintiff asserts that he did not actually receive the handbook, and only in his Motion for Leave to File a Surreply, does he challenge the validity of the signature on this form. Throughout the briefing on this issue, there were mis-readings of the date on this form, but it is clear that the form, whether valid or not, does speak to October 10, 2017, months prior to the Samples Incident.

The second fact relevant to the Samples Incident is that Plaintiff alleges that in the aftermath of the attack and lack of medical care, he complained about the incident to Defendant Toney and that Defendant Toney responded, "this conversation is over and this incident never happened." [ECF No. 90, at 12]. Plaintiff asserts that

this occurred in an affidavit attached to his Response to the Motions for Summary Judgment. [ECF No. 90, Ex. 1].

The third, uncontested, fact relevant to the Samples Incident is that Plaintiff did not file a grievance within 15 days. Plaintiff does allege that he filed a grievance about the Samples Incident in August 2018, more than six months later, but this grievance has not been produced. Even if it had been produced, this grievance would have been filed far more than 15 days after the Samples Incident.

The second incident that Plaintiff hopes to recover for involves the remaining three defendants. In his amended complaint, Plaintiff lays out a series of events in March 2019. Plaintiff alleges that out of retaliation for a time that he "touched staff," Defendants Bell and Benton, both correctional officers, were throwing his breakfast on the ground so that he could not eat, throwing hot coffee on him, and then later entered his cell, spraying him with phantom gas and beating him before taking him for medical attention. Plaintiff says that he was then seen by Defendant Nurse Gregory who failed to provide him with any medical care after the use of phantom gas or the physical beating. I will refer to this attack, and alleged lack of medical care, as the Bell Incident throughout this opinion.

Plaintiff filed two grievances regarding the Bell Incident on April 4, 2019. These grievances were ultimately rejected as untimely because the grievances were filed more than 15 days after the incident. Notably, neither of these grievances

4

contain any allegations against Defendant Gregory, or any medical provider for that matter, and do not include any complaints about a lack of medical care.

The date of the Bell Incident is highly disputed in the briefs on this Motion. The Amended Complaint states that the Bell Incident occurred in March of 2019. Plaintiff's Affidavit, attached to his Response, states that the incident happened on April 1, 2019. The grievances filed by Plaintiff on April 4, 2019, originally state that the incident happened on March 1, 2019, but an edit was made indicating that it might have been April 1, 2019.

The complaint for this civil action alleged an incident in March 2019 and Plaintiff has not moved to amend his complaint. Therefore, the question for me in this case is whether Plaintiff properly exhausted his administrative remedies with regard to an alleged use of force in March 2019. Whether or not an incident occurred in April 2019, and whether the produced grievance forms properly exhaust for that claim, is outside the scope of this action. Therefore, I will proceed in this opinion to evaluate just that, whether Plaintiff has properly exhausted his administrative remedies for the Bell Incident, which allegedly occurred in March 2019.

### III.   Applicable Law

Administrative exhaustion is a threshold question that must be decided before determining the merits of a case. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the

judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at \*3 (S.D. W. Va. Sept. 12, 2017) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

Both the PLRA and WVPLRA require inmates to exhaust their administrative remedies before they bring a lawsuit. 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the PLRA broadly, stating that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Similarly, the WVPLRA makes it mandatory for an inmate to first exhaust administrative remedies provided by the inmate's correctional facility before instituting a civil action challenging the inmate's confinement. W. Va. Code § 25-1A-2; *see also White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility in which he/she is housed."). The WVPLRA provides that: "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). An

"ordinary administrative remedy" is "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison." *Id.* § 25-1A-2(a).

The West Virginia Department of Corrections and Rehabilitation sets the uniform procedures for filing an inmate grievance. *See* W. Va. Code § 25-1A-2. If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies." *Miller v. Rubenstein*, No. 2:16-CV-05637, 2018 WL 736044, at *5 (S.D. W. Va. Feb. 6, 2018) (citing Policy Directive 335.00(V)(D)(4)).

The procedure for filing an inmate grievance is as follows:

> An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. The unit manager is required to return an answer to the grievance back to the inmate within five days. If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review. Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response." "The Warden/Administrator shall respond to the appeal . . . within five (5) days." Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the

applicable time has passed. The Commissioner is allotted
ten days to respond to the appeal.

*Id.* (quoting Policy Directive 335.00).[1]

Policy Directive 335.00 specifically states that "'[e]xhaustion' shall mean submitting an accepted grievance and properly appealing an accepted grievance fully and receiving a final response thereto by the Commissioner. Rejections do not constitute exhaustion. Remands are not final responses unless expressly stated in the decision." *Hatcher v. Rubenstein*, No. 2:17-CV-02054, 2018 WL 6036433, at *9 (S.D. W. Va. Aug. 8, 2018), report and recommendation adopted, No. 2:17-CV-02054, 2018 WL 4628321 (S.D. W. Va. Sept. 27, 2018) (quoting Policy Directive 335.00(V)(D)(4)). The Policy Directive further provides that "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefor has not exhausted administrative remedies." *Id.* (quoting Policy Directive 335.00(V)(A)(5)).

In *Ross v. Blake*, the Supreme Court held that an inmate need not exhaust unavailable remedies, 136 S. Ct. 1850, 1868 (2016). The court defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court further held that there are three ways in which administrative remedies are unavailable to an inmate: (1) when

---

[1] Defendants in this case point to Section 90 of the West Virginia Code Regulations as the authority which outlines the grievance procedure process. Section 90, however, was repealed in 2016.

(despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–1860.

Failure to exhaust "is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Porter v. Sturm*,781 F.3d 448, 451 (8th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 212–13 (2007)). However, if a defendant makes "a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *4 (S.D. W. Va. Sept. 12, 2017). The availability of administrative remedies under the PLRA and exhaustion itself are both questions of law. *See Ray v. Kertes*, 130 F. App'x 541, 543–44 (3d Cir. 2005); *Ballenger v. Hill*, No. 3:15-CV-12558,2018 WL 4655709, at *3 (S.D. W. Va. Sept. 27, 2018). Accordingly, any disputes of facts regarding exhaustion will be resolved by the Court.

The Fourth Circuit has noted that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008). Filing a grievance and going through the entire appeals process is not enough on its own. The

filed grievance must, at a minimum "alert[] the prison to the nature of the wrong for which redress is sought.'" *Wilcox v. Brown*, 877 F.3d 161, 170 n.4 (4th Cir. 2017) (quoting *Strong v. Davis*, 297 F.3d 646, 650 (7th Cir. 2002).

## IV.  Analysis

### a.  Exhaustion of the Samples Incident

Defendant Officers Hayhurst, Hypes, Toney, Elmore, and Smith and Defendant Nurse Coleman make similar arguments as to why Plaintiff failed to exhaust his administrative remedies for the Samples Incident. Both argue Plaintiff failed to exhaust because he never filed a grievance as required by Mount Olive grievance procedures. Plaintiff responds that his failure to file a grievance for this matter is excused because administrative remedies were unavailable to him under two of the theories in *Ross*. First, Plaintiff argues that administrative remedies were unavailable to him at that time because he did not have actual knowledge of the grievance procedure and therefore the administrative scheme was opaque to the point that it was incapable of use. Second, Plaintiff argues that his interaction with Defendant Toney intimidated him out of pursuing any administrative remedy and that said remedy was therefore unavailable.

There is an inherent tension between these two arguments. How could Plaintiff have been intimidated out of pursuing a remedy that he first argues he did not pursue because he did not know that it existed. Despite these contradictions, I will address each argument in turn.

10

### i.  Knowledge of Grievance Procedures

The Defendants who were involved with the Samples Incident assert that Plaintiff was in fact aware of the grievance procedures because he received a copy of the handbook on October 3, 2017. Defendants' evidence of this is the "Acknowledgment of Receipt" form, which indicates that Plaintiff received the Mount Olive Correctional Complex Inmate Handbook on October 3, 2017, months prior to the Samples Incident. Plaintiff has been inconsistent on his position as to whether the handbook sufficiently explains the procedures. [ECF No. 86, Ex. J (admitting that the Inmate Handbook provides inmates with information related to the grievance process); ECF No. 84, Ex. 1 (denying that inmate handbook contains instructions on how to file a grievance)]. However, Plaintiff has been consistent in insisting that he never received the handbook and that he does not remember signing the form. [ECF No. 86, Ex. J ("Plaintiff does not recall signing such a document")].[2]

The receipt of the handbook and what it includes are clearly disputed facts, but these facts are immaterial to the issue of the availability of the grievance procedure. Plaintiff contends that when an inmate has not been informed of grievance procedures, those procedures are "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands" and therefore are unavailable. [ECF No. 90 (quoting *Ross*, 136 S. Ct. at 1859)]. However, that Plaintiff may not have been aware of these procedures does not make them unknowable. These procedures are

---

[2]  I do not address Plaintiff's argument that the signature on the Acknowledgment of Receipt form is fabricated because it was only raised in Plaintiff's Motion for Leave to File a Surreply.

not unknowable, they were—accepting Plaintiff's contentions as true—merely *unknown* to Plaintiff at the time. This distinction matters.

The United States District Court for the Northern District of West Virginia has succinctly laid out why lack of knowledge of grievance procedures does not equate to unavailability.

> Lack of knowledge of the grievance process does not excuse compliance with the requirement that a prisoner exhaust his administrative remedies. See *Graham v. Cnty. of Gloucester*, 668 F. Supp. 2d 734, 740–41 (E.D. Va. 2009) *aff'd sub nom.*, *Graham v. Gentry*, 413 F. App'x 660 (4th Cir. 2011) (citing support from the United States Courts of Appeal for the Seventh Circuit, Sixth Circuit, and Tenth Circuit). This is so because "[i]f exhaustion could be excused when a prisoner claimed a lack of specific knowledge about the grievance process, an 'awareness' exception requiring courts to analyze and determine prisoners' knowledge levels of the grievance process at given points in time would be undoubtedly routinely invoked . . . [and] fraught with uncertainty." *Id.* at 740.

*Persinger v. N. Reg'l Jail & Corr. Facility*, Civil Action No. 5:14-cv-119, 2015 U.S. Dist. LEXIS 102199, at 10 (N.D. W. Va. Aug. 5, 2015).

Therefore, the only relevant fact to this argument is that Plaintiff did not file a grievance, as required by Mount Olive Correctional Complex procedures, within 15 days of the Samples Incident. These procedures were not unavailable to him, and his lack of knowledge did not prevent him, through no fault of his own, from exhausting the grievance procedures.

### ii. Intimidation

Plaintiff then contends that the grievance procedure was unavailable after the Samples Incident because he was intimidated out of pursuing a remedy by Defendant Toney. According to Plaintiff, soon after the Samples Incident, Plaintiff "expressed to Correctional Officer Richard Toney [his] belief that the attack had been arranged for and ordered by the Aryan Brotherhood. Defendant Toney responded by saying 'this conversation is over and this incident never happened.' Defendant Toney's response caused [Plaintiff] to fear for [his] safety if [he] were to further pursue the matter . . . ." [ECF No. 90, at 12].

Like other courts, I will use the test first established by the Eleventh Circuit Court of Appeals which requires the inmate to show: (1) subjectively, that "the threat did actually deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process;" and (2) that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (quoting *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008)). This test has been adopted by the Third and Ninth Circuits, *Rinaldi*, 904 F.3d at 268; *McBride v. Lopez*, 807 F.3d 982, 987–88 (9th Cir. 2015), and used by District Courts in this Circuit, *see, e.g., Knutson v. Hamilton*, 2021 U.S. Dist. LEXIS 20197, *9–10 (W.D. Va. Feb. 3, 2021). A generalized fear of

retaliation does not suffice to render administrative remedies unavailable. *Rodrigues v. Hamilton*, 2021 U.S. Dist. LEXIS 21865, *15 (W.D. Va. Feb. 5, 2021).

First, I cannot find that the statement by Defendant Toney subjectively prevented Plaintiff from filing a grievance when Plaintiff also argues that he did not file a grievance because he was not aware that the procedures existed. Also, I cannot find that this statement would deter an inmate of reasonable firmness from filing a grievance. This statement was not in reference to Plaintiff stating that he wanted to file a grievance or even related to the possibility of filing a grievance. Rather the statement was made in response to Plaintiff's allegation regarding who he believed was responsible for organizing the attack. Nothing that Plaintiff alleges about this conversation indicates that he was attempting to file a grievance or lodge a complaint. This one interaction does not rise to the level of intimidation established by *Ross* as making grievance procedures unavailable.

Plaintiff has not made a showing that he even considered availing himself of the grievance procedures and was unable to because Defendants or other prison administrators actively prevented him from doing so. The Motions for Summary Judgment brought by Defendants Hayhurst, Hypes, Toney, Elmore, Smith, and Coleman are **GRANTED.**

### b. Exhaustion for the Bell Incident

As stated above, Plaintiff's Amended Complaint alleges that the Bell Incident happened in March 2019. The grievance forms he initially filed match this timeline

14

and state that the incidents occurred on March 1 and March 4, 2019. As explained above, Plaintiff now argues the incidents may have occurred in April 2019. However, because March is the month alleged in Plaintiff's Amended Complaint, I will determine whether he has exhausted his administrative remedies based on that timeline. It is undisputed that the grievances Plaintiff claims were related to the incidents with Officers Bell and Benton and Nurse Gregory were filed on April 4, 2019. This is more than 15 days after the incidents occurred and these grievances were ultimately rejected by Mount Olive as untimely. Because Plaintiff did not comply with the timelines required by the grievance procedures at Mount Olive, he did not exhaust his administrative remedies for the Bell Incident. The Motions for Summary Judgment filed by Defendant Officers Benton and Bell and Nurse Gregory are **GRANTED.**

### c.  Motion to File a Surreply

Plaintiff also seeks leave to file a surreply to further dispute the date of certain events such as the alleged signing of the handbook acknowledgment and the Bell incident timeline. All of these arguments were available to Plaintiff to make in the Response and would not meaningfully assist the court in its decision making. Plaintiff's Motion is **DENIED.**

## V.    Conclusion

The Motions for Summary Judgment [ECF Nos. 84 and 86] are **GRANTED.** Plaintiff's Motion for Leave to File a Surreply [ECF No. 93] is **DENIED.** The court

**DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 26, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE